# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The cellular telephone assigned call number 414-232-5365 (the "Target Cell Phone"), and the location of the Target Cell Phone, whose service provider is Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey.

Case No. 19-MJ-1219

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

TFO Scott Marlow, DEA
Printed Name and Title

Sworn to before me and signed in my presence:

Date: 3/7/19

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
Printed Name and Title

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-232-5365 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. Prior to my current assignment, I was employed as a police officer with the City of West Allis, a suburb of Milwaukee, Wisconsin for approximately nine (9) years. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I

have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

- a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

- b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

- c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

- d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

- e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

- f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

- g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

- h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

2

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Jabber WALKER (dob: 04/16/1980) has violated, and is continuing to violate, Title 21, United States Code, Sections 841 and 846. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal offenses and will lead to the identification of other individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

6. In August of 2017, case agents initiated an investigation into the Jimmy BATES Drug Trafficking Organization (DTO). As part of the investigation, case agents have interviewed several confidential sources and have utilized one confidential source

3

to complete three controlled purchases of heroin from BATES. The first controlled purchase from BATES was for 35 grams of heroin, the second was for 125 grams of heroin, and the third was for 100 grams of heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement officers, case agents have learned that BATES obtains kilogram amounts of heroin from several known and unknown sources of supply, and is the leader of a large-scale heroin distribution network operating in the Milwaukee metropolitan area. Case agents have identified BATES' command and organizational structure of the organization. Case agents have identified WALKER aka CANNON as a heroin and marijuana distributor and a source of supply of heroin for BATES.

7. In August and September of 2017, case agents interviewed a confidential source (CS #1). CS #1 stated that s/he is in state custody for drug trafficking charges, including a heroin overdose death. CS #1 identified his source of supply of heroin as being Jimmy Bates, aka "Big Jim," or "Homie." CS #1 stated that BATES would charge $90 per gram of heroin and that CS #1 had bought up to 200 grams of heroin at a time from BATES. CS #1 stated that s/he had observed at least three "bricks" (kilograms) of heroin at one of BATES' stash houses located at North 43rd and Burleigh Street in the City of Milwaukee. CS #1 stated that BATES is smart and switches up his stash houses often. CS #1 stated that BATES had a 2012 Audi A7 that is a Christmas red and green custom color/paint job and that he also drives rental vehicles often. CS #1 stated that

4

BATES has several associates, including "Big Nash," Justin STAMPS, Jesse aka "Budda," Willie Jordan, and Devon Wooten.

8. For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing continuous information since August of 2017. Second, the information CS #1 has provided is substantially against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation, including information from other sources. CS #1 is in state custody for drug trafficking charges, including a heroin overdose death and is cooperating for consideration on those charges. CS #1 has a prior conviction for delivery of heroin. Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein. For these reasons, case agents believe CS #1 to be reliable.

9. On multiple occasions since February of 2018, case agents interviewed a confidential source (CS #3). CS #3 provided information regarding individuals who were involved in moving substantial amounts of heroin and cocaine in the Milwaukee area, including Jimmy BATES. CS #3 stated that Snowball, Juan, Howie, and Cameron Dowell were all members of BATES' drug trafficking organization in Milwaukee. CS #3 stated that BATES used to sell cocaine and heroin but was now strictly in the heroin business. CS #3 stated that it is not uncommon for BATES to pick up 4 kilograms of heroin at a time

5

from his supplier in Chicago. CS #3 states that BATES pays $70,000-$75,000.00 per kilogram of heroin and cuts it up before selling it in Milwaukee. CS #3 identified Calvin Nash as "Snowball," a member of BATES' crew and responsible for selling cocaine and heroin and "Juan" as DeJuan Harrison.

10. For several reasons, case agents believe that CS #3 is reliable and credible. First, CS #3 has been providing information since February of 2018. Second, the information provided by CS #3 is substantially against his/her penal interests. Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial portions of CS #3's information has been corroborated through independent investigation, including information from other sources and law enforcement reporting. CS #3 is cooperating for potential consideration on federal drug trafficking charges. CS #3 has a prior felony conviction for second-degree reckless homicide. For these reasons, case agents believe CS #3 to be reliable.

11. On November 6, 2018, investigators utilized CS#3 to conduct a controlled purchase of 100 grams of heroin from BATES for $7,000.00. Prior to the controlled buy, CS #3 and his/her vehicle was searched for contraband, rendering negative results. Case agents observed CS #3 meet with BATES, who ultimately conducted the transaction with CS #3 for 100 grams of heroin. After the controlled buy, case agents met with CS #3 and seized the heroin and the recording devices. Case agents reviewed the recording device utilized by CS #3 to confirm CS #3's purchase of heroin from BATES. Case agents field

6

tested the heroin with positive results. On February 7, 2019, investigators utilized CS #3 to conduct a controlled purchase of 100 grams of heroin from BATES for $7,000.00. Prior to the controlled buy, CS #3 and his/her vehicle was searched for contraband, rendering negative results. Case agents observed CS #3 meet with BATES, who ultimately conducted the transaction with CS #3 for 100 grams of heroin. After the controlled buy, case agents met with CS #3 and seized the heroin and the recording devices. Case agents reviewed the recording device utilized by CS #3 to confirm CS #3's purchase of heroin from BATES. Case agents field tested the heroin with positive results.

12. In February of 2019, case agents interviewed CS #3, who stated that an individual named "Bags", whom the CS positively identified as Jabber WALKER, aka Jabber Walker, is a co-conspirator in the BATES DTO. CS#3 stated that WALKER obtains heroin and marijuana and re-distributes heroin and marijuana in the Milwaukee area to numerous customers. CS #3 stated that BATES told CS #3 that WALKER is a "middle man" for BATES and that WALKER purchases kilograms of heroin from an unknown Mexican source of supply. BATES informed CS #3 that he (BATES) has not met the Mexican source of supply yet, and that WALKER is in control of the narcotics transactions.

13. On February 2, 2019, CS #3 was at 2925 N. 23 St, Milwaukee, WI a known "stash" residence for the BATES DTO. While CS #3 was inside the residence, CS #3 conducted a covert video recording of the kitchen area of the residence, in which BATES, WALKER and several other identified co-conspirators were present. Upon reviewing the

7

covert recording, case agents observed WALKER "bagging" marijuana into what appeared to be ounce amounts for re-distribution. Investigators also observed what appeared to be a black firearm on the kitchen table, along with suspected heroin next to WALKER. CS #3 stated that during this covert video recording, WALKER was in possession of approximately 75 grams of heroin. WALKER aka Jabber Walker is currently on federal supervised release for a prior federal felon in possession of a firearm conviction.

14. On February 18, 2019, CS #3 provided case agents with WALKER's cellular telephone number 414-232-5365 (Target Cell Phone). On February 28, 2019, case agents obtained a court ordered pen/trap and trace for the Target Cell Phone. Review of the collected toll data from the Target Cell Phone revealed that WALKER is in frequent telephone contact with BATES, Calvin NASH, and several other identified members of the BATES DTO.

15. Case agents are requesting this warrant authorizing the disclosure of location data related to the Target Cell Phone for 45 days to investigate WALKER'S activities, and to identify additional locations to which WALKER is traveling in order to further his drug distribution network and identify additional co-conspirators, customers, and sources of supply.

16. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in

8

which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that Jabber WALKER is engaging in the trafficking and distribution of heroin and is utilizing the telephone number 414-232-5365 (Target Cell Phone) to further these crimes. I further submit that probable cause exists to believe that obtaining the location information of 414-232-5365 (Target Cell Phone) will assist case agents in determining WALKER'S other customers, co-conspirators, sources of supply, and help to identify stash houses.

17. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and

9

can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18. Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that Verizon can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B,

10

which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Verizon to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

11

## ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number 414-232-5365 (the "Target Cell Phone"), whose service provider is Verizon, a wireless telephone service provider headquartered in Bedminster, New Jersey.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Verizon, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government. In addition, Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services, including by initiating a signal to determine the location of the Target Cell Phone on Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).